**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **JACKSON NATIONAL LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff and** | ) | |
| **Counterclaim Defendant,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **1:17-cv-03857-WMR** |
| | ) | |
| **STERLING CRUM,** | ) | |
| | ) | |
| **Defendant and** | ) | |
| **Counterclaim Plaintiff.** | ) | |

<u>**STERLING CRUM'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO EXCLUDE
EXPERT REPORT AND TESTIMONY OF VERA F. DOLAN**</u>

**INTRODUCTION**

Ignoring the mandatory language of Local Rule 26.2(C), on December 14, 2018 at 8:13 PM, less than four hours before discovery was set to close, Plaintiff/Counterclaim Defendant Jackson National Life Insurance Company purported to designate Vera F. Dolan as an expert in this case. Jackson provided a professed expert report (the "Report") along with its extremely dilatory disclosure. In the Report, Dolan, who is not a lawyer, offers opinions consisting entirely of legal conclusions, the majority of which are not even at issue in this case. These

opinions as to the legal implications of certain conduct constitute improper testimony under the Federal Rules of Evidence. Moreover, Dolan's opinions consist almost entirely of irrelevant *ipse dixit* and are imprecise, unspecific, and inadequately explained.

This Court should exclude the Report and preclude Dolan from testifying in this case for two independent reasons: (1) Jackson's extraordinarily late disclosure violated Local Rule 26.2(C), and (2) Dolan's Report and potential testimony fail to meet the standards for admissibility.

## PROCEDURAL HISTORY

Jackson filed its Complaint on October 3, 2017 seeking declaratory judgments that an insurance policy on the life of Kelly Douglas Couch, for which Defendant/Counterclaim Plaintiff Sterling Crum is the beneficiary (the "Policy"), is void *ab initio* as an illegal human life wagering contract and for lack of an insurable interest. (*See* Doc. 1.) This is not a case where expert testimony is required. Rather, this Court must decide whether Plaintiff met its burden to prove that the Policy was an illegal human wagering contract at the time it was issued without the self-serving, contradictory, and baseless conclusions contained within the Report.

## TIMING OF EXPERT DISCLOSURE

Jackson did not identify an expert until prejudicially late in the discovery process. More specifically, Jackson did not identify an expert witness in its initial disclosures. (*See* Initial Disclosures, attached as **Exhibit 1** at ¶ 4). Despite verbally engaging Dolan on November 16, 2018, Jackson did not identify an expert nor produce any documents related to an expert during the seven months of discovery in this matter. Instead, Jackson provided Dolan's expert report on December 14, 2018, less than four hours before discovery was set to close. (*See* Deposition of Vera F. Dolan, attached as **Exhibit 2** at 6:3-13). To that end, the Court extended the four-month discovery period, which was originally set to run through September 24, 2018, first through November 1, 2018 (Doc. 41) and again through December 14, 2018 (Doc. 44). Instead of designating an expert and providing a report early enough during this near seven-month discovery period to allow Crum to depose the expert, name his own expert, and allow Jackson to depose Crum's expert, all before the close of discovery, Jackson waited until the closing hours of the last day of discovery before designating Dolan and providing Crum with her Report. (*See* Email from M. Broadbent to B. Cobb and D. Fulop, attached as **Exhibit 3**; Report of Vera F. Dolan, attached as **Exhibit 4**.) This plainly dilatory tactic violates the applicable rules and should not be condoned.

## PROPOSED EXPERT TESTIMONY

Jackson intends to proffer Dolan as its expert witness in order to opine on the legal ramifications central to the issues to be decided by this Court: whether the Policy was void *ab initio* and whether Jackson should pay the claim. Jackson also intends to offer Dolan's opinion that "there was nothing in the underwriting workup or assessment of Mr. Couch that deviated from standard practice." (Exhibit 4 at 5.) For the reasons described in detail below, the Court, not Dolan, will and should determine the law applicable to these issues. Additionally, because Dolan's opinions on these matters lack the required reliability, the Court must exclude them.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     Jackson Cannot Offer Dolan As An Expert Because It Designated Dolan As Its Expert Too Late in the Discovery Period.**

First and foremost, Dolan should be excluded as an expert because Jackson did not designate Dolan as its expert sufficiently early in the discovery process. The Local Rules for the Northern District of Georgia mandate early disclosure of expert witnesses:

> Any party who desires to use the testimony of an expert witness **shall** designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the

> close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.
>
> Any party who does not comply with the provisions of the foregoing paragraph **shall not** be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

N.D. Ga. L.R. 26.2(C) (emphasis added). Where a party fails to comply with this rule, the Court will exclude the expert regardless of whether "the untimely and insufficient designation resulted in material prejudice to" the opposing party. *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1195 (N.D. Ga. 2005).

Here, the disclosure was untimely, prejudicial, and insufficient. Jackson designated Dolan as its expert and disclosed her report less than four hours before the then-scheduled close of discovery on December 14, 2018. (*See* Exhibit 3.) This late disclosure violated the requirements of Local Rule 26.2(C). At the time of Jackson's disclosure, the parties were discussing whether a final, short extension of the discovery period was appropriate to address outstanding discovery owed to Crum. The parties agreed to a short extension later that evening. In the Joint Motion requesting an extension of the discovery period, Crum reserved his right "to object to Plaintiff's December 14, 2018 disclosure, including but not limited to the timing of Plaintiff's disclosure." (Doc. 47 at ¶ 13.) Even considering the

Court's final extension of the discovery period to January 4, 2019 (Doc. 48), Jackson designated Dolan only 21 days before the close of discovery.

On its face, this short 21-day time frame, which included both the Christmas and New Year's holidays, did not and could not have provided sufficient time for Crum to depose Dolan, to designate his own expert, and for Jackson to depose Crum's expert. *See Gainor v. Douglas Cty., Georgia*, 59 F. Supp. 2d 1259, 1296-97 (N.D. Ga. 1998) (finding that the disclosure of an expert was not sufficiently timely where the party provided its expert's report only 26 days before the close of discovery). In fact, Crum was not able to depose Dolan until January 4, 2019, leaving no time for Crum to designate a counter-expert and for Jackson depose him or her.[1] Because Jackson failed to abide by Local Rule 26.2(C)'s mandatory language and also failed to put forth any explanation for its prejudicial delay, the Court "shall not" permit Jackson to proffer the opinions of Ms. Dolan. The Court, therefore, should exclude Ms. Dolan's report and testimony on this basis alone.

---

[1] Consistent with its obstructionist strategy, Jackson waited until the afternoon of January 3, 2019, less than 24 hours before Dolan's deposition, to produce over 600 pages of responsive documents regarding various policies and procedures in place when Couch applied for the Policy—matters material to Dolan's opinion that the underwriting of the Policy did not deviate from standard practice. The Court should not reward this unwarranted gamesmanship.

**II.     Separately, Dolan's Proposed Testimony and Report Fail to Meet the Standards for Admissibility.**

Leaving aside Jackson's flagrant violation of the disclosure rules, Dolan's testimony should be excluded because it does not meet the standards for admissibility. Dolan's testimony relies exclusively on a number of *ipse dixit* statements, consists of unreliable legal conclusions masquerading as expert opinion, is not based on reliable principles and methods, and would not assist the trier of fact to understand the issues in this case.

**A.     Standards for Admissibility of Expert Testimony.**

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

When applying Rule 702, courts in the Eleventh Circuit utilize the three-part test set for the by the United States Supreme Court in *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Under this test, a trial court may admit expert testimony "into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

"Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (citations omitted). Similarly, "[a] witness also may not testify to the legal implications of conduct; the court must be the . . . only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). When an expert's testimony essentially contains nothing more than legal conclusions, such testimony is improper. *See, e.g., In re Acceptance Ins. Cos.*

*Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005); *United States v. Duncan*, 42 F.3d 97, 101 (2nd Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994). "[T]he standard is not that experts may testify and offer legal conclusions as long as such testimony would only amount to harmless error, the standard is that expert witnesses may not testify and offer legal conclusions *at all*." *Convertino v. U.S. Dep't of Justice*, 772 F. Supp. 2d 10, 13 (D.D.C. 2010) (emphasis in original) (granting motion to strike expert designation and expert report containing impermissible legal conclusions).

Regarding the reliability of a witness's proposed testimony, if "the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (citations and punctuation omitted). "As the Supreme Court explained in *Joiner*: 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Accordingly, where a proposed expert's opinion relies on the "naked assurances of the purported expert,"

a court must exclude that opinion because admitting it "is tantamount to disregarding entirely the reliability prong of the *Daubert* analysis." *Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1315 (N.D. Ga. 2006).

Here, Dolan offers two categories of opinion. First, Dolan offers an unfounded opinion that the Policy at issue involved a "scheme . . . to defraud [that] voids the policy from inception." (*See* Exhibit 4 at 3.) Second, Dolan offers her unsupported belief that the underwriting on the Policy could not have discovered the purported fraud. Each of these categories, along with the entirety of Dolan's proposed testimony and report, should be excluded.

## B.    Dolan's Report and Proposed Testimony Related to Alleged Fraud and the Policy's Validity Are Inadmissible.

In the first section of the Report, Dolan provides her unsupported opinion on the central issue in the case: she opines that there was a fraudulent scheme that voids the Policy from its inception and that Jackson is excused from paying Crum's claim. (*See* Exhibit 4 at 3.) Dolan seemingly bases this opinion on discrepancies between the "three versions" of Couch that the Report identifies. (*See id.* at 2.) After noting these discrepancies, which are obvious from the face of documents produced and in no way require a purported underwriting and claims handling expert to identify, Dolan summarily concludes that Crum's claim on the Policy "is part of a scheme to make money that involves defrauding Jackson

National," that "this scheme of Kelly Couch, Sterling K. Crum and Cash for Life to defraud Jackson National voids the policy from its inception," and that "this claim should not be paid by Jackson National." (*See id.* at 3; Exhibit 2 at 60:2-9.) None of these opinions are admissible.

i.     *Dolan's opinions are legal conclusions.*

Nearly all of Dolan's conclusions are legal conclusions and opinions on the central questions of law in this matter. Issues of law are, of course, to be decided by the Court and not an expert. When an expert's testimony essentially contains nothing more than legal conclusions, such testimony is improper. *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d at 905; *Duncan*, 42 F.3d at 101; *Berry*, 25 F.3d at 1353. "[C]ourts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." *Cook*, 402 F.3d at 1112 n.8 (internal quotation marks and citation omitted); *see also Coward v. Forestar Realty, Inc.*, 282 F. Supp. 3d 1317, 1331–32 (N.D. Ga. 2017) (applying *Cook* to exclude legal conclusions). The trier of fact must "evaluate the facts in light of the applicable rule of law, and it is therefore erroneous for a witness to state his opinion on the law of the forum." *Marx & Co. v. Summerlin*, 550 F.2d 505, 510 (2nd Cir. 1977); *see also Berckeley*

*v. Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3rd Cir. 2006) (stating that courts "must ensure that an expert does not testify as to the governing law of the case.").

By opining that the allegedly fraudulent scheme she somehow gleaned from the documents renders the Policy void *ab initio* and excuses Jackson from paying the claim, Dolan is impermissibly testifying as "to the legal implications of conduct." *Montgomery*, 898 F.2d at 1541. The Court, not Dolan, will determine when, under Georgia law, an insurance policy becomes void *ab initio* and an insurer does not have to pay. Accordingly, the Court should exclude Dolan's testimony as legal conclusions masquerading as expert opinions.

    ii.    *Dolan's opinions regarding a scheme by Couch to defraud are not relevant to the question of whether Crum and Couch intended to enter into an illegal human wagering contract.*

Dolan's opinions regarding a scheme to defraud Jackson are not relevant to any actual issue in this case. Georgia's two-year incontestability period, O.C.G.A. § 33-25-3(a)(2), bars Jackson from refusing to pay a claim on the grounds of fraud. In a clever slight-of-hand, Jackson attempts to do just that by conflating an intent to enter a human wagering contract with a general scheme to defraud. Jackson then attempts to support that obfuscation by "expert" testimony. The issue in this case is whether Crum induced Couch to take out the Policy with the preconceived intent to transfer the beneficiary interest to Crum a year later. Evidence of general

fraudulent intent (which cannot be proven here in any event) and inconsistencies or misstatements in the insurance application are irrelevant to that narrow question. Dolan's unsupported opinions that Crum's claim on the Policy is a scheme to defraud Jackson should be excluded as irrelevant and unhelpful to the trier of fact. *See Cook ex rel. Estate of Tessie*, 402 F.3d at 1111.

     iii.   *Dolan's opinions are imprecise, unspecific, and inadequately explained.*

Even if Dolan's opinion regarding a scheme to defraud were relevant and not opinions on the legal issues central to this matter, it should still be excluded as unreliable because it is imprecise, unspecific, and inadequately explained. Dolan opines that Couch, Crum, and Cash for Life were all part of the same scheme to defraud Jackson. (*See* Exhibit 4 at 3.) In her deposition, Dolan stated unequivocally that she didn't know all the players in the "scheme" and that it was "a matter of law enforcement investigation." (*See* Exhibit 2 at 79:8-10.) At one point, Dolan even seemed to suggest that Plaintiff's own field underwriter, who "warrant[ed] to the insurer that Mr. Couch was a good risk" for life insurance, was also a part of the alleged scheme to defraud Plaintiff. (*See id.* at 67:3-18, 86:16-22.) Dolan does not explain how the facts she reviewed led her to the conclusion that Couch, Crum, and Cash for Life were all part of the same scheme to defraud Jackson. In fact, Dolan twice states that it "is not clear" which parties were involved in causing the

conflicting medical documentation. (*See* Exhibit 4 at 2.) When questioned about the parties involved in the conflicting medical documentation, Dolan suggested that this was once again a matter that would require "someone from law enforcement" to answer. (*See* Exhibit 2 at 54:6-25, 55:1-16.)

Dolan never analyzes the possible reasons for the identified discrepancies and never explains how they demonstrate that Couch, Crum, and Cash for Life were all part of the same fraudulent scheme.[2] Dolan failed to precisely explain which "facts" demonstrate "fraud" by which specific party. When Dolan was asked to identify the parties involved in the scheme, it was a matter for law enforcement. (*See id.* at 79:8-10.) When asked if there were interactions between Couch and Crum to perpetuate this scheme, it was once again a matter for law enforcement. (*See id.* at 79:15-23.)

---

[2] Dolan's report never discusses the strong possibility that Cash for Life, with or without Couch's participation, committed fraud ***against Crum***. The documents Dolan reviewed suggest that Couch could have come to Cash for Life to broker a viatical transaction after receiving coverage, and Cash for Life provided Crum with false information portraying Couch as HIV-positive in order to extract a higher price. That Couch lived well past the life expectancy reported to Crum and that he died from alcohol abuse-associated pancreatitis, not HIV/AIDS, makes this scenario all the more likely. When confronted with this possibility, Dolan testified: "[i]f Mr. Crum was - - if he was - - well, let's say he was the pigeon in this scheme. He's still involved in the scheme. Even if he was the dupe, he's still involved in it." (*See* Exhibit 2 at 86:2-5.) Nevertheless, as between the parties here – Jackson and Crum – none of Dolan's opinions are helpful to the trier of fact.

Finally, the report is completely silent on the methodological foundation Dolan employed to reach her opinion. Because "imprecise and unspecific" opinions can confuse and mislead a trier of fact instead of assisting, the Court should exclude Dolan's catchall, unsupported, and *non sequitur*-laden opinion that Couch, Crum, and Cash for Life were all part of the same scheme to defraud Jackson. *See Frazier*, 387 F.3d at 1266.

iv.   *Dolan's opinions are ipse dixit statements.*

Finally, Dolan's opinions that the alleged scheme to defraud "voids the policy from its inception" and that "this claim should not be paid by Jackson National" (*See id.* at 3) are inadmissible because they are both unreliable and impermissible *ipse dixit* statements. As explained above, the relevant issue in this case is whether Crum caused Couch to procure the Policy with the intent to transfer the beneficiary interest to Crum. Dolan never explains how or why the Policy is void. Dolan never discusses life wagering contracts or whether the data she reviewed makes it more or less likely that both Crum and Couch had this impermissible intent in procuring the Policy. Dolan jumps past these necessary analytical steps. Thus, these opinions are "connected to existing data only by the *ipse dixit* of the expert," and the Court should exclude them. *Cook ex rel. Estate of Tessie*, 402 F.3d at 1112 (citation and punctuation omitted).

- 15 -

**C.    The Court Must Exclude Dolan's Proposed Testimony on the Underwriting of the Policy Because It Contains Only Unreliable Opinions.**

In the second section of the Report, Dolan opines on the quality of the underwriting of the Policy. Dolan supports her conclusions by reiterating facts plainly obvious from the documents describing the extent of Jackson's predecessor's underwriting of the Policy. (*See* Exhibit 4 at 3-5.) Then, again without explaining any reasoning or methodology, she summarily concludes that "there was nothing in the underwriting workup or assessment of Mr. Couch that deviated from standard practice" and that "there was no information that could have possibly alerted the underwriter that further investigation into Mr. Couch's health personal risk or identity was necessary." (*Id.* at 5.) Because Dolan never explains what the standard underwriting practice entails, how the underwriting of the Policy conformed to that practice, or what specific information she relied upon, her opinions are "naked assurances" that this Court must exclude. *Dukes*, 428 F. Supp. 2d at 1315.

Moreover, Dolan's opinions are contradicted by documentary evidence produced in discovery. Dolan fails to explain how she knows that "no information" existed at the time of the application that could have possibly altered Jackson to the need to conduct further investigation. Dolan's opinion also directly contradicts

Jackson's own admissions and allegations in its Complaint. In its Complaint, Jackson stated that when it reviewed Crum's claim on the Policy, it discovered that the 8600 Social Security Number Couch listed on his application was issued in Puerto Rico at least fifteen years before Couch was born. (Doc. 1 ¶¶ 52-53.) Jackson then alleged that it conducted further review into whether to pay the claim "[a]fter discovering this information." (*Id.* at ¶ 55.) Because information alerting Jackson to the need for further review, including the Social Security number listed on the application, existed at the time the application was made, Dolan's opinion is unreliable.[3]

More to the point, Dolan's opinion that the underwriter complied with standard practice is a conclusion disconnected from the facts. Dolan did not review Jackson's predecessor's specific underwriting policies in place at the time of the Policy. In her deposition, Dolan described an "aging amount requirements chart" that would describe the specific actions an insurer must take when underwriting a policy based upon the applicant's age and the amount of the death benefit. (*See* Exhibit 2 at 43:7-21.) When asked whether she reviewed the relevant "aging amount requirements chart" in place at the time the subject policy was issued,

---

[3] Dolan also fails to opine on whether Jackson could have or should have done its recent investigation at the time Couch applied for life insurance.

Dolan stated: "I think it would be in the material that I probably saw yesterday, the large massive quantity of data that got brought down. I assume it's in there. It had a whole lot of other things that were similar to that. I would have to take a look."[4] (*See* Exhibit 2 at 52:2-7.) Unsurprisingly, the chart referenced by Plaintiff's expert, which would purport to delineate the underwriting guidelines and requirements of the insurer at the time the subject Policy was issued, was not a part of the production received by Defendant's counsel on the eve of Dolan's deposition.

Dolan also did not explain the elements of standard underwriting practice. While not explicit, she appears to be relying solely upon her underwriting education and experience. (*See* Exhibit 4 at 6.) But, because Dolan did not explain how that experience led to her conclusion of no deviation, why that experience is a sufficient basis for her opinion, and how that experience is reliably applied to the facts of the underwriting of this Policy, her opinion is unreliable. *See Frazier*, 387 F.3d at 1261.

For these reasons, the Court should also exclude Dolan's proposed testimony regarding the underwriting of the Policy.

---

[4] The "large massive quantity of data" Dolan refers to is the over 600 pages of various policies and procedures that Plaintiff served onto Defendant's counsel less than 24 hours before Dolan's deposition.

## CONCLUSION

By waiting until hours before the end of the discovery period to designate Dolan as an expert and produce her Report, Jackson violated Local Rule 26.2(C). For this reason alone, this Court must exclude Dolan's report and testimony. Separately, this Court should also exclude Dolan's proposed testimony because, for the reasons outlined above, all of her opinions fail to meet the standards for admissibility of expert testimony.

**[SIGNATURE ON FOLLOWING PAGE]**

Respectfully submitted this 8th day of March, 2019.

**PARKER,     HUDSON,     RAINER     & DOBBS, LLP**

*/s/ Scott E. Zweigel*
Scott E. Zweigel
Georgia Bar No. 786616
303 Peachtree St., N.E.
Suite 3600
Atlanta, Georgia 30308
(404) 523-5300
sez@phrd.com

*Local     Counsel     for     Defendant     and Counterclaim Plaintiff Sterling Crum*

**COBB EDDY, PLLC**

Brady J. Cobb
Appearing *pro hac vice*
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
(954) 527-4111
bcobb@cobbeddy.com

*Lead     Counsel     for     Defendant     and Counterclaim Plaintiff Sterling Crum*

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with Local Rule 7.1(D), I certify that the foregoing brief has been prepared in conformity with Local Rule 5.1. This memorandum was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch.

This 8th day of March, 2019.

> */s/ Scott E. Zweigel*
> Scott E. Zweigel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused a copy of the foregoing **STERLING CRUM'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF VERA F. DOLAN** with the Clerk of Court using the court's CM/ECF system which will send electronic notice of such filing to all counsel of record.

This 8th day of March, 2019.

*/s/ Scott E. Zweigel*
Scott E. Zweigel